UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AQUIL ABDUL-SALAAM, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : 3:08-CV-207(EBB) |
| | : |
| ANDREA LOBO-WADLEY and | : |
| NEW HAVEN BOARD OF EDUCATION | : |
| | : |
| Defendants | : |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Aquil Abdul-Salaam ("Abdul-Salaam") sued Andrea Lobo-Wadley and the New Haven Board of Education ("NHBE" collectively, "Defendants") for damages because of a statement attributed to Lobo-Wadley in a *New Haven Register* article. The statement concerned the reason for Abdul-Salaam's termination as a substitute teacher by the NHBE. Counts One and Two of the Complaint are, respectively, state-law claims for defamation and false light invasion of privacy against Lobo-Wadley. The Court and Defendants construe Count Three as alleging a stigma plus claim under 42 U.S.C. § 1983 against Lobo-Wadley. Count Four repeats Count Three, but is brought against NHBE.[1]

Currently pending before the Court is Defendants' Motion for

---

[1]Defendants incorrectly state in their Memorandum of Law in Support of Defendants' Motion for Summary Judgment that "The complaint in this action contains four counts, but the fourth count is a repetition of the third count." (Mem. at 1.) This is inaccurate. Count Four of the Complaint incorporates paragraphs 1 through 13 of Count Three and is brought against the NHBE.

Summary Judgment [doc. #22] on all counts of the Complaint.  For the following reasons, Defendants' Motion for Summary Judgment is DENIED.

### **FACTUAL BACKGROUND**

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and this decision rendered on, Defendants' motion.  The factual summary below does not represent factual findings of the Court.  All facts stated below are undisputed unless stated otherwise.

Abdul-Salaam, a New Haven, Connecticut resident, was employed as a substitute teacher by the NHBE from early November, 2006 until the end of the 2006-2007 school year and then for the 2007-2008 school year until his termination on October 12, 2007. Lobo-Wadley was employed by the NHBE as the Director of Personnel and Labor Relations for the New Haven public schools.

During the 2007-2008 school year, Abdul-Salaam was assigned to Beecher Elementary School ("Beecher") as a building substitute teacher.  His specific assignment was to supervise music classes for all grades.

Abdul-Salaam did not possess the requisite skills to teach music to students.  Instead of teaching music, the principal and assistant principal of Beecher instructed Abdul-Salaam to show movies to the students in his classes.  Accordingly, Abdul-Salaam showed various movies that he obtained from the school library

and from other teachers.  The assistant principal of Beecher gave Abdul-Salaam two PG-13 rated movies to show to his second, third, and fourth grade classes.  When Abdul-Salaam ran out of movies from the school, he purchased a bootleg copy of the cartoon movie *The Simpsons Movie* that he showed to those same classes.  He was present in the classroom each time that he showed *The Simpsons Movie* to his students.  Abdul-Salaam neither viewed the movie before he showed it to his students, nor did he either read the movie's cover or research its content on the internet.  He did not ask Beecher administrators for permission to show *The Simpsons Movie* to his students.

*The Simpsons Movie*, which was based on the popular and long-running television program, contains a brief image of Bart Simpson's genitalia as he skateboards naked across Springfield and, during this skateboard ride, another character, Ned Flanders, sees Bart and yells the word "penis," which is then repeated by his sons.  The movie also includes a scene in which two male police officers kiss.

After Abdul-Salaam showed the movie in class, John Elliott ("Elliott"), a parent who had children in Abdul-Salaam's music classes, complained to Beecher's principal and to the New Haven Superintendent of Schools, Reginald Mayo ("Mayo"), about his children having been shown the movie.  Mayo notified Lobo-Wadley in her capacity as the Director of Personnel and Labor Relations

to investigate Elliott's complaint.

On October 5, 2007, Lobo-Wadley sent Abdul-Salaam a letter notifying him that he was being placed on unpaid leave pending investigation into his conduct of allegedly showing a movie to students containing what was termed "obscenity and profanity" and that a hearing regarding his conduct was scheduled for October 11, 2007.  At the hearing, Abdul-Salaam admitted that he had shown *The Simpsons Movie* to second, third and fourth graders and that he had not watched it beforehand.  He also explained that he had done so because he was running out of things to do with the children and that he thought that the movie was only a cartoon.

Lobo-Wadley relayed this information to Mayo.  Subsequently, Mayo terminated Abdul-Salaam's employment as a substitute teacher via a letter Lobo-Wadley drafted for his signature.  This letter stated in part that Abdul-Salaam was being terminated as a substitute teacher "for reasons of poor judgment."  The context of the letter established that the "poor judgment" pertained to Abdul-Salaam's decision to show *The Simpsons Movie* to second, third and fourth grade students.

Subsequently, the *New Haven Register*, a daily newspaper of general circulation, investigated Abdul-Salaam's termination. Reporter Phil Helsel ("Helsel") spoke to Elliott and then to school personnel for their comments.  During a telephone conversation, Helsel asked Lobo-Wadley a number of questions

about the circumstances of Abdul-Salaam's termination.  Lobo-Wadley answered Helsel's questions.  Among the statements made by Lobo-Wadley to Helsel were that Abdul-Salaam had told her that he had not watched *The Simpsons Movie* prior to showing it in school and that he thought that it was just a cartoon.

On October 19, 2007, an article written by Helsel was published in the *New Haven Register* about Abdul-Salaam's termination.  This article was disseminated globally via the internet.  The ninth paragraph of the article contained a sentence attributed to Lobo-Wadley which read:

> He was placed on unpaid administrative leave immediately after the Oct. 4 complaint, and was fired last Friday for "obscenity and insubordination," she said.

According to Helsel, the portion of the sentence in quotation marks was a direct quote of what Lobo-Wadley told him and the rest of the sentence was paraphrased.  Lobo-Wadley disputes the exact quotation.

At her deposition, Lobo-Wadley testified that when she used the word "obscenity" during her telephone conversation with Helsel, she was referencing the content of *The Simpsons Movie*.[2]  At the time of her deposition, Lobo-Wadley had never watched *The Simpsons Movie*.  Helsel testified that he did not ask Lobo-Wadley what she meant by the term "obscenity" because he understood that

---

[2] The Court makes no findings regarding whether any scenes within *The Simpsons Movie* were actually obscene.

5

she was referring to the portions of the movie that showed Bart Simpson skateboarding naked and that he believed that one could argue that the scene in which two male police officers kissed was also obscene.

## **STANDARD OF REVIEW**

On a motion for summary judgment, the moving party has the burden to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56©. See also Anderson v. Liberty Lobby, 477 U.S. 242, 256 (1986)(holding that a plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," while an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (1986).

If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23, accord, Goenaga v. March

of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d. Cir. 1995) (holding that a movant's burden is satisfied by showing the absence of evidence supporting an essential element of the nonmoving party's claim).

Courts are mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party. . . ." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d. 520, 523 (2d Cir. 1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  If the nonmoving party submits evidence which is "merely colorable," or is not "significantly probative," summary judgment may be granted.  Anderson, 477 U.S. at 249-50.

## **DISCUSSION**

I.  Introduction

Abdul-Salaam's Complaint contains four counts.  Counts One and Two are, respectively, state-law claims for defamation and false light invasion of privacy against Lobo-Wadley.  Both claims assert that because of Lobo-Wadley's statement to the *New Haven Register*, Abdul-Salaam lost "his ability ever to work in the field of education [again] and [that he] has suffered emotional distress, humiliation, disgrace and economic loss."  (Compl. at ¶ 10.)  The Court and Defendants construe Count Three as alleging a stigma plus claim under 42 U.S.C. § 1983 against Lobo-Wadley for

depriving Abdul-Salaam "of his liberty right to practice his profession without a name-clearing hearing as to the charge of obscenity, in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, as enforced through Sections 1983 and 1988 of Title 42 of the United States Code."  (Compl. at ¶ 13.)  Count Four repeats Count Three, but is brought against the NHBE.  Abdul-Salaam does not seek a name clearing hearing; only damages.

Defendants move for summary judgment on all counts. Specifically, regarding Counts One and Two, they allege that Lobo-Wadley's statement to the *New Haven Register* was true, a defense to both claims of defamation and of false light invasion of privacy.  Regarding Count One, Defendants also argue that Lobo-Wadley did not possess the requisite malice to sustain the claim.  On Count Three, Defendants argue both that Lobo-Wadley's statement was true and that she is entitled to qualified immunity because reasonable central office administrators could disagree about the falsity of her statement.  Defendants construe Count Four to be identical to Count Three and seek its dismissal for that reason.

A.   Defamation Claim Against Lobo-Wadley (Count One)

As noted, Abdul-Salaam maintains that Lobo-Wadley defamed him when she spoke to the reporter for the *New Haven Register* and

stated that he was fired for obscenity.  Lobo-Wadley asserts the truth of her statement.  She maintains that no reasonable person would understand it to mean anything other than that *The Simpsons Movie* contained obscenity and that Abdul-Salaam's display of that movie for children led to his termination.

In Connecticut, a defamatory statement is defined as "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  <u>Gambardella v. Apple Health Care, Inc.</u>, 291 Conn. 620, 627 (2009).  "To establish a prima facie case of defamation, a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  <u>Id</u>. (quoting <u>Cweklinsky v. Mobil Chem. Co.</u>, 267 Conn. 210, 217 (2004)).  Falsity is an essential element of a defamation claim.  Consequently, the truth of an allegedly defamatory statement refutes a prima facie case of defamation.  <u>See</u> <u>Woodcock v. Journal Publishing Co.</u>, 230 Conn. 525, 553-54 (1994).  To recover punitive damages, a plaintiff must prove actual malice.  <u>Gambardella</u>, 291 Conn. at 628.

Defendants' aver that "the statement that the plaintiff was fired 'for obscenity' is not false . . . ."  (Mem. at 15.)

9

However, elsewhere in their memorandum, they state that "reasonable school administrators could disagree [about] whether the statement that the plaintiff was 'fired for 'obscenity'' read in the context of the rest of the newspaper article was a false statement." (Mem. at 12.)

On a motion for summary judgment, the Court is obliged to construe all facts and make all inferences in favor of the non-moving party. Because, as Defendants concede, reasonable school administrators could disagree about the truth of Lobo-Wadley's statement, the Court finds that reasonable jurors might deny the truth of Lobo-Wadley's statement as well. Consequently, as a matter of law, Defendants cannot prevail on a motion for summary judgment on Count One because their defense to the charge of defamation is the truth of Lobo-Wadley's statement.

With regard to their argument that Lobo-Wadley did not act with the requisite malice, "actual malice [is defined] as the publication of a false statement with knowledge of its falsity or reckless disregard for its truth." Gambardella, 291 Conn. at 634. The evidence establishes that Lobo-Wadley knew the veracity of her statement to Helsel because she knew the reason for Abdul-Salaam's termination. Because Lobo-Wadley drafted the termination letter for Mayo's signature, she knew that Abdul-Salaam was fired for poor judgment. Because actual malice is knowledge of a statement's truth or falsity and Lobo-Wadley knew

the truth of her statement to Helsel, summary judgment is inappropriate for Plaintiff's defamation claim.

B.  <u>False Light Invasion of Privacy Claim Against Lobo-Wadley (Count Two)</u>

Abdul-Salaam seeks compensatory and punitive damages from Defendants for Lobo-Wadley's alleged false light invasion of privacy.

"The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; and (2) is such a major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." <u>Goodrich v. Waterbury Republican-American, Inc.</u>, 188 Conn. 107, 131 (1982) (internal quotations and citations omitted).  In such a case, a false light invasion of privacy occurs if: "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  <u>Id</u>. (quotations and citations omitted).

Assuming that any reasonable person would be offended if falsely accused of having been terminated for obscenity and because, as discussed above, even Defendants concede that

"reasonable school administrators could disagree whether the statement . . . was a false statement" (Mem. at 12), summary judgment is inappropriate on Count Two.

C.  Stigma Plus Claim Against Lobo-Wadley (Count Three)

Defendants seek summary judgment on Count Three, the stigma plus claim, for two reasons: first, because of the alleged truth of Lobo-Wadley's statement and second, because they claim that Lobo-Wadley is entitled to qualified immunity.  A "stigma plus" claim provides, in limited circumstances, a remedy for government defamation under federal constitutional law.  See Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003).

1.  The Falsity of Lobo-Wadley's Statement

Defendants argue that "no jury could reasonably find that the statement in the newspaper article attributed to defendant Lobo-Wadley that the plaintiff was fired for obscenity created a false impression regarding the reason for the plaintiff's termination."  (Mem. at 8.)  However, again, in their discussion of whether Defendant Lobo-Wadley is entitled to qualified immunity, Defendants state that "reasonable school administrators could disagree whether the statement that the plaintiff was

12

'fired for 'obscenity'' read in the context of the rest of the newspaper article was a false statement."  (Mem. at 12.)  Because of their contradicting assertions regarding this issue, it seems impossible for "reasonable school administrators" to disagree regarding the meaning of Lobo-Wadley's statement, but that the Court, resolving all ambiguities and drawing all inferences in favor of Abdul-Salaam, could find that no jury could reach "a false impression regarding the reason for the plaintiff's termination."  Consequently, for the purposes of summary judgment, Defendants have not established the truth of Lobo-Wadley's statement to Helsel.

2.  Lobo-Wadley Claim of Qualified Immunity

Defendants also seek summary judgment on Count Three on the grounds that Lobo-Wadley is entitled to qualified immunity.

"Qualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity is not only a defense, it is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  The qualified immunity defense requires consideration of

the clarity of the law establishing the right allegedly violated and whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood that the applicable law was being violated.  These inquiries combine to form a standard that the Supreme Court in Harlow called "objective legal reasonableness."  Harlow, 457 U.S. at 819.  The Supreme Court has made clear that the question of qualified immunity should be resolved at the earliest possible opportunity.  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009).

When evaluating a motion for summary judgment on the basis of qualified immunity, the court must engage in a two-part inquiry to assess whether the official's conduct violated a clearly established constitutional right.  See Pearson, 129 S.Ct. at 815-16.  Under Saucier v. Katz, 533 U.S. 194 (2001), the threshold question asked is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  Id.  If a violation of a constitutional right can be demonstrated, then the court proceeds with the second question, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Id. at 816.  In Pearson, the Supreme Court modified the Saucier inquiry, holding that the questions need not proceed in this rigid order.  Id. at 818 (deeming the Saucier inquiry order "beneficial," but no longer necessary).

We thus begin by examining whether Lobo-Wadley's conduct was prohibited by federal law.  Abdul-Salaam's complaint alleges that Lobo-Wadley made a defamatory statement about him to the *New Haven Register*.  Defamation is an issue of state law and not federal constitutional law and therefore provides an insufficient basis to maintain a Section 1983 action.  Lauro v. Charles, 219 F.3d 202, 207 (2d Cir. 2000) (citing Paul v. Davis, 424 U.S. 693, 699-701 (1976)).  However, liberally construing the allegations contained within the Complaint, Abdul-Salaam appears to seek relief under the "stigma plus" doctrine, which in limited circumstances provides a remedy for government defamation under federal constitutional law.  See Doe v. Dep't of Pub. Safety ex rel. Lee, 271 F.3d 38, 47 (2d Cir. 2001), rev'd on other grounds, Conn. Dep't of Pub. Safety v. Doe, 538 U.S. 1 (2003).

To bring a stigma plus claim, "a plaintiff [must] allege (1) the utterance of a statement about her that is injurious to her reputation, 'that is capable of being proved false, and that he or she claims is false,' and (2) 'some tangible and material state-imposed burden . . . in addition to the stigmatizing statement,'"  Velez v. Levy, 401 F.3d 75, 87 (2d Cir. 2005) (citations omitted).  The first prong is the stigma and the second is the "plus."  See DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).

Defendants rightly concede that the second prong of the

15

stigma plus test is met because Abdul-Salaam was terminated; unquestionably a state-imposed burden.  See DiBlasio, 344 F.3d at 302 ("it is clear that defamation 'plus' loss of government employment satisfies the Paul 'plus factor.'")  Defendants only contest the first prong-whether a stigmatizing statement was made.

Specifically, Defendants argue that it was objectively reasonable for Lobo-Wadley to make the challenged statement because reasonable administrators could disagree regarding the legality of her actions.  But this is not true-reasonable administrators would not likely disagree about whether publicizing a stigmatizing statement at the time of termination is legal.  Reasonable administrators might disagree about whether Lobo-Wadley's statement to Helsel was defamatory-just as the Court finds that reasonable jurors might-but that disagreement does not mean that the legality of a stigma plus claim is questionable.  Construing all facts in favor of the nonmoving party, the Court concludes that a reasonable juror could conclude that Lobo-Wadley's statement was injurious to Abdul-Salaam's reputation and was therefore stigmatizing.

Having sufficiently alleged a violation of a constitutional right, under Saucier, the second question is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  533 U.S. at 816.  It was.  See Neu v.

Corcoran, 869 F.2d 662, 667 (2d Cir. 1989) (discussing how termination from a government job coupled with defamation can be a deprivation of a liberty interest).  Because "the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  Harlow, 457 U.S. at 818-19.

Thus, because Abdul-Salaam had a constitutional right that was well-established and because a reasonable juror could conclude that Lobo-Wadley made a stigmatizing statement in connection with his termination, she is not entitled to qualified immunity.  See Saucier, 533 U.S. 194.  Consequently, summary judgment is inappropriate on Count Three.

D.   Stigma Plus Claim Against The NHBE (Count Four)

As noted, Defendants incorrectly allege that Count Four of the Complaint is identical to Count Three.  However, despite the lack of any argumentation from Defendants, the Court holds that summary judgment is inappropriate on Count Four because of the same analysis of falsity as discussed regarding Count Three.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment [doc. #22] is DENIED.  Plaintiff's Motion to Strike [doc. #23] is DENIED because the Court does not need to reach its

merits to decide Defendants' Motion for Summary Judgment.

                                        SO ORDERED

                                      /s/

                                      ELLEN BREE BURNS
                                      SENIOR U.S. DISTRICT JUDGE

Dated at New Haven, Connecticut this 14th day of October, 2009.